DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

AT MARCH TERM, 1857

---

TODD, MACKAY and RAFFERTY *vs.* JACKSON and MAGENNIS.

1. Where a tenancy has expired, the landlord may take possession of the premises by any means short of personal violence; he may break into a dwelling-house for the purpose; he may remove goods which he finds there; and after obtaining possession, he may protect that possession, as well against the tenant who attempts to hold over, as against a stranger who intrudes upon his possession.

2. In an action of trespass the defendant may prove, under the general issue, title in himself, or in a third person, under whose command he entered on the premises, but he cannot prove title in a stranger under whom he does not justify.

3. A plaintiff in an action of trespass, *quare clausum fregit*, need not show his title, so long as he can show a possession, or right of possession, either adverse to or consistent with the title set up by the defendant.

4. The action of trespass, both as to real and personal property, is a possessory action. A party in possession is *prima facie* the owner, and may recover to the extent of the injury done, unless the defendant show something in mitigation of the damages.

5. If there is a reversionary interest which entitles the reversioner to an action for injury to the freehold, in an action of trespass brought by the

person in possession, the defendant, to entitle him to a mitigation of damages, must show that there is such a reversioner, and that the damages should be mitigated because he (the defendant) is answerable over to another person for the same injury.

6. If a plaintiff in an action of trespass, for the purpose of obtaining damages for an injury to the freehold, attempts to prove his title, and fails, he is not to be prejudiced by such failure, but if he show his possession, or right to possession, may recover for all the injury committed.

7. But if the plaintiff, in attempting to prove his title, shows title in another, or so exposes his title as to entitle the defendant to a mitigation of damages, the defendant may take advantage of such exposure, and claim mitigation of damages.

8. If the land belonging to infants is conveyed by their guardian, and the grantee enter into possession under such deed, he can maintain an action of trespass against a third party for injury done to the freehold, whether such deed is valid or not.

9. If the deed is invalid, the infants in such case have not a reversionary interest that will enable them to maintain an action for injury to the freehold.

---

In error to the Supreme Court.

The facts in this case sufficiently appear in the opinion delivered in this court.

*A. S. Pennington* and *W. L. Dayton*, for plaintiffs in error.

*A. B. Woodruff* and *A. O. Zabriskie*, for defendants.

The opinion of the court was delivered by

THE CHANCELLOR. The plaintiffs in error brought an action of trespass against the defendants in the Circuit Court of the county of Passaic. The declaration contained four counts.

The first count alleged that defendants, on October 1st, 1850, and on divers days between that and December 5th, 1850, being partners, broke and entered a close of plaintiffs, called the home mill lot, situate, &c., and with horses, wagons, &c., subverted, damaged, &c., the earth and soil of said close, and with a number of men to wit, one hun-

dred, for a long time, to wit, ten hours on each of said days, encumbered the said close, &c.

The second count alleged that the defendants, being partners, &c., on November 30th, 1850, broke and entered a building and mill of plaintiffs, known as the home mill, situate, &c., and by their servants, &c., made a great noise and disturbance, for ten hours on that day, and forced off, broke down, and separated from said mill and building, and its appurtenances, all the shafting and gearing in, affixed, fastened, and attached to the floors, walls, and ceilings of the two rooms constituting the first and second stories above the basement story of said mill, together with the bridges, &c., belonging thereto, of the value of two thousand dollars, and carried away the same, &c., by means of which the plaintiffs were deprived of its possession, &c., and hindered and prevented from carrying on their business in said mill during said day, and from making profits to the amount of two thousand dollars.

The third count alleged that defendants, on November 30th, 1850, being partners, &c., took and carried away the shafting and gearing, &c., in the second count mentioned, of the value of two thousand dollars, which were, when taken, detached and separated from the mill.

The fourth count alleged that defendants, being partners, &c., on November 30th, 1850, broke and entered the home mill, situate, &c., and forced off, broke down, loosened, and separated from said mill all the shafting and gearing, with their appurtenances, then being in, affixed, fastened, and attached to the walls, &c., of the second story aforesaid, and divers shafting, &c., (alleging the weights) of the value of one thousand dollars, took and carried away, &c. And also, then, &c., took, &c., the shafting, gearing, &c., in the first story (alleging the weights) of the value of fifteen hundred dollars, and converted the same to their own use. By means of which the plaintiffs were, on the day and year aforesaid, not only

annoyed, &c., and hindered from transacting business, &c., "but also were deprived of and lost great gains and profits, to wit, to the amount of two thousand dollars, and which they might and otherwise would have received from their said lawful business." And other wrongs, &c., to plaintiffs' damage of five thousand dollars.

The defendants pleaded—

*First.* The general issue.

*Second. Liberum tenementum.*

*Third.* That the property, alleged in the declaration to have been taken away by the defendants, was the property of the defendants, and that of right they took it, &c.

Upon the issue joined under the second plea, no evidence was offered on the part of the defendants. Upon the issue under the first and third pleas, the jury found for the plain- tiffs, and assessed their damages at $2600.

A great number of exceptions were taken during the pro- gress of the trial at the circuit. These exceptions were re- moved by writ of error to the Supreme Court, and upon ar- gument before three of the judges of that court, two of them being in favor of reversal, the judgment of the Circuit Court was thereupon reversed. The same exceptions that were be- fore the Supreme Court are here upon a writ of error, to be reviewed by this court.

The Supreme Court decided the cause upon one only of the numerous exceptions that were before them, and gave no opinion upon the other exceptions, the judge de- livering the opinion of the court very justly remarking that many of the exceptions were clearly frivolous, and served only to complicate and obscure the case. The ex- ception sustained by the Supreme Court was this: The Circuit Court admitted in evidence a deed from Catharine Holsman and others to the plaintiffs, and charged the jury that the deed was sufficient evidence of title for the purposes of that suit. The Supreme Court were of opinion that the deed was inoperative and void, and that the charge of the court below was wrong, and that the rights

of the defendants were prejudiced by the erroneous view taken by the court as to the operation and validity of that deed.

Of the numerous exceptions to which I have adverted, this one in reference to the deed, and one other, which related to the possession of the plaintiffs, were strongly pressed by the counsel for the defendants in their argument before this court. These two exceptions are the only ones I deem of any importance to notice.

*First.* As to the exception relating to the possession. The question of possession was a question for the jury, and the court did not interfere with the province of the jury as to the questions of fact by which they were to determine that possession. But it was insisted, on behalf of the plaintiffs, that although the plaintiffs might be in the actual possession of the *locus in quo,* they had acquired it unlawfully, and in such a manner as would debar them from acquiring a right, by means of it, to maintain an action against the defendants. We must look to the charge of the court to ascertain what principles of law were laid down to the jury to guide them in their decision.

The court, upon this question of the possession, charged the jury as follows :

"Although a landlord, upon the determination of the term of his tenant, is entitled to the possession of his estate, a question is raised, how he is to enforce his right, if the tenant holds over.

Can he, under any circumstances, take possession by his own act, or must he, in all cases, invoke the aid of the law?

This question should be met and answered on principle, controlled by policy. If a tenant's term is expired, upon what just pretext should he keep the owner out of the enjoyment of his own property? What should prevent such owner from resuming his property? Nothing but public policy can be interposed. The law abhors breaches of the peace and personal encounters, and hence it will

not protect the owner of property out of his possession in obtaining the possession by force and strong arm leading to a breach of the peace, or hazarding such a consequence. Therefore, a landlord cannot go into his house at the end of the year and turn his tenant out of doors, or remove his goods into the street, against his consent and upon resistance. But being entitled to possession, if he can obtain it without a breach of the peace, and without injuring his tenant's person or his property, he may do so; and a subsequent re-entry by the tenant upon the owner's possession would be a trespass. When in, his estate is perfect by title and possession, and his former tenant thus and thereafter becomes to him as a stranger."

It is evident, taking the charge in connection with the facts of the case, that the court intended to lay down the law, that when the tenancy has expired, the landlord may enter into possession without the consent of his tenant; and that where the *locus*, if a building, is vacant, the landlord may break open the doors, and use such force as may be necessary to re-possess himself of his property. Giving to the charge this broadest construction, and which is the most favorable for the view of the tenant's legal rights contended for on behalf of the defendants, I think the law propounded by the court, as to the landlord's rights, is correct.

The case of *Turner* v. *Meymott*, 1 *Bing.* 158, was an action of trespass for breaking and entering plaintiff's close. The plaintiff had been tenant of the house from week to week. The defendant (his landlord) gave him notice to quit, which he failed to do. The defendant, at a time when no person was in the house, broke open the door with a crow-bar, and resumed possession. The plaintiff had left some furniture in the house. The court, at the Assizes, told the jury that the law would not allow the defendant thus forcibly to reinstate himself, and a verdict was found for the plaintiff. But the Chief Justice, and two other justices concurring, without hesitation set the

verdict aside. Park, J., said "The declaration states that the defendant broke and entered the house of the plaintiff, but the fact was not so; the plaintiff had gone out, and the house was not his, but his landlord's, who had a right to break his own door; as no person was within, there could be no danger to any man's life." Lord Kenyon says in *Taunton* v. *Costar*, 7 *T. R.* 431, "It is clear the landlord could have justified in a plea of *liberum tenementum*. There can be no doubt of his right to enter upon the land at the expiration of the term;" and that decision, in my judgment, goes the whole length of the present.

The case of *Newton and wife* v. *Harland and another*, 1 *Man. & Grang.* 644, is not at all in conflict with the case of *Turner* v. Meymott. On the contrary, Ch. Just. Tindal, in his opinion in the latter case, says "the lessor may even break and enter a house, provided it be empty, which has been occupied and held over by his tenant, though the tenant may have left some of his property therein; and he cites the case in 1 *Bing.* with approbation. The case in *Man. & Grang.* only sustains this principle, that where a tenant remains in possession after the expiration of his term, a landlord is not justified in expelling him by force in order to regain possession, and for such personal violence is liable to an action for assault and battery. The case was twice argued, and with great research. Upon looking at the case, it will be found that counsel on both sides, as well as all the judges who heard the argument, assumed it as an indisputable proposition, that the landlord might resume possession, if he could obtain it peaceably without personal violence, and upon such possession could maintain trespass. The only question was, whether the landlord could be justified in committing an assault in re-taking possession.

In this case the mill was unoccupied. The defendants had removed all their property, paid the rent, and left the building. On the 25th of November, the plaintiffs were put into possession by the landlord of the defendants. On

the 30th of November, the defendants, with a large number of men, forcibly entered the mill, tore down the fixtures, and carried them away. I cannot doubt that the court was right in telling the jury, if such were the facts, the possession of the plaintiffs was such as to enable them to maintain their action.

In the case of *Hyatt* v. *Wood*, 4 *J. C. R.* 150, the following principles were established: If a person having a possessory title to land enters by force, and turns out a person who has a naked possession only, the latter cannot maintain trespass against the person so entering under color of title. If a person having a legal right of entry on land enters by force, though he may be indicted for a breach of the peace, yet he is not liable to a private action of trespass for damages at the suit of the person who has no right, and is turned out of possession. Where a tenant holds over the term, and the landlord enters by force and turns him out, he cannot maintain trespass against the landlord.

I should be willing to go further than the judge in his charge to the jury in reference to the right of the landlord in re-assuming possession of his property after the tenancy expired. I am willing to lay down the law to be, that the landlord may take possession by any means short of personal violence; that he may break into a dwelling-house for the purpose, because no one ought to complain of him for such an injury done to his own property; that he may remove goods which he finds there, because they are an unlawful encroachment upon his rights; that once in possession, he may protect that possession, as well against the individual who, in violation of his contract, has attempted to wrong him, as against a stranger who intrudes upon his possession. I assume that the tenancy has expired; that the tenant has no excuse for withholding the possession, and that he has left his goods there for the purpose of preventing the landlord from asserting his legal right of entry.

Todd v. Jackson.

It was insisted, on behalf of the defendants, that the court was wrong in charging the jury in reference to the rights of the landlord, because a landlord who, after the expiration of the tenancy, enters without the consent of his tenant, by breaking the doors and removing the goods of the tenant in the house, is guilty, under the act, of a forcible entry and detainer; he does not, therefore, acquire such a *lawful* possession as to enable him to maintain an action of trespass. But admitting that a landlord, thus obtaining possession, is guilty of a forcible entry and detainer, how can the fact that the landlord has been guilty of one unlawful act justify the tenant in a repetition of the same wrong. The tenant could not justify retaking the property *by force;* and yet it is insisted that, in an action of trespass brought against him, he may successfully defend himself, not upon the ground that he has a right of entry, but that the plaintiff obtained his possession unlawfully. I say, not upon the ground that he has a right of entry; for although he may maintain successfully an action of forcible entry and detainer, he does not recover in this action by virtue of his own title, but only upon the unlawful act of his adversary. These views are in accordance with those expressed by Cottman, J., in Newton *v.* Harland, and by Bagley, J., in *Butcher* v. *Butcher,* 7 *B. & C.* 399 ; and the same doctrine is recognized in *Taylor* v. *Cole,* 3 *T. R.* 295 ; and in *Taunton* v. *Costar,* 7 *T. R.* 431, 7 *Moore* 574; *Argent* v. *Durant,* 8 *T. R.* 403.

But the exception upon which the Supreme Court reversed the judgment of the Circuit Court was that taken to the admission in evidence of the deed from Mrs. Holsman and others to the plaintiff, and to the instructions given the jury in reference to the validity and effect of that deed. Mr. Justice Elmer, in delivering the opinion of the Supreme Court, thus succinctly as possible states the facts and questions in reference to the deed, as they were presented on the trial :

"After proving that the mill and other property be-

longed to one Daniel Holsman, who died seized of it,
leaving Catharine Holsman, his widow, Daniel Holsman,
Maria Holsman, Eliza B. Holsman, and Julia Holsman,
infants under the age of twenty-one years, and Catharine
Ann, who intermarried with Clement B. Barclay, and Mar-
garetta, who intermarried with James Barclay, his children
and heirs, plaintiffs offered in evidence a deed for said prop-
erty, purporting to be made by said Catharine Holsman,
as widow and as guardian of the infant heirs, by virtue
of an order of the Chancellor, and by the two Barclays and
their wives, to the plaintiffs, bearing date November 1st,
1850, before the acts complained of were committed. It
appeared that Mrs. Holsman was the guardian of the
infants, appointed by the Orphans' Court, but no order
of the Chancellor, recited in the deed or other authority, to
sell the interest of the infants was produced. To the recep-
tion of this deed defendants' counsel objected, on the ground
that no authority from the Chancellor to sell was shown;
but the deed was admitted, and a bill of exceptions
sealed. It does not appear by this bill whether it was re-
ceived as a valid conveyance of the infants' rights to the
property or not; and had nothing appeared to show that it
was relied on as sufficient evidence of the title and as evi-
dence of the possession of the whole interest in the property,
inasmuch as it was clearly admissible as a valid conveyance
of those who were of age, there would, perhaps, have been
no error."

But it further appears that the judge charged the jury,
"that if the plaintiffs had no interest there beyond a naked
possession, the amount of their recovery should be gra-
duated by one scale; if their possession was coupled with
an interest in the estate, real and personal, or either,
it should be graduated by another scale. The present plain-
tiffs claim to have been there in possession through Mr.
Barclay, and that they were the owners of the soil and
mill property, and also of the shafting and gearing. A
deed and bill of sale or confirmation have been offered in

evidence to show the rights of the plaintiffs. The two seem to carry out what Mr. Barclay and Mr. Pennington have testified was the contract of sale. The possession of the property alleged to be conveyed by these papers has passed from the representatives of the estate to the plaintiffs. Neither the grantors, nor any party claiming under them, have impugned that title, and it is sufficient for this case to say that a stranger to the transaction, without estate in or claim of property, cannot step forward, either as a friend of the orphan children, or as a protector of the rights of the administratrix, or as a champion for creditors, and by objection, without assailing proof, lawfully impeach that sale, or the *prima facie* evidence to be drawn from the instruments of writing which tend to establish it."

This part of the charge was excepted to; and the judge was requested, on the part of the defendants, to charge, " that as to the real estate, there is no evidence of the title of four-sixths thereof being the portions of the children, who were minors at the time of the execution of the deed to the plaintiffs, having been transferred to the plaintiffs, the plaintiffs' deed for the same being inoperative and void, as to such four-sixths part thereof;" but the judge refused so to charge, and his refusal was excepted to.

The Supreme Court was of opinion that the deed was void and inoperative, as far as the interest of the infants in the lands was concerned, and was no evidence of title as to the " four-sixths " which belonged to them, and that the judge erred in not so instructing the jury; and for that reason the court reversed the judgment.

The first question to be determined is, was it necessary, in the position which the cause stood before the jury, for the plaintiffs to offer any evidence of title. It was not necessary for the plaintiffs to offer their title in evidence for the purpose of overcoming any superior title under which the defendants had justified, or which they had

offered in their defence for the purpose of controverting the possession, or right of possession, of the defendants. The defendants had offered no evidence under their plea of *liberum tenementum*. They might have given title in themselves in evidence under the general issue. *Dodd* v. *Kyffin*, 7 *T. R.* 354; *Argent* v. *Durrant*, 8 *T. R.* 403; *Monumoi* v. *Rogers*, 1 *Mass.* 160; and that the defendants entered on the plaintiffs by command of a third person, who had title. *Gilbert Ev.* 258; *Leon.* 301. Such evidence is admissible under the general issue, because it controverts the possession of the plaintiff; but the defendant, under the general issue, cannot prove title in a stranger under whom he does not justify. *Note 3 to § 625 of 2 Greenleaf on Ev.* In the case in *Leon.*, the defendant pleaded not guilty, and the question was, if he might give in evidence that, at the time of the trespass the freehold was in such a one, and he, as his servant and by his command entered; and it was said by Coke, that the same might be so well enough; and so it was adjudged in Trevilian's case; for if he by whose command he entereth had a right, at the same instant the defendant entered, the right is in the other, by reason whereof he is not guilty as to the plaintiff; and judgment was given accordingly. If the defendants had offered in evidence a title in themselves, or in a third person under whose command they set up a right of entry, and it had become necessary to settle the titles of the respective parties in order to ascertain the possession, then the validity of the deed in question would have been a matter of importance. But the question of possession did not at all depend upon the title of the respective parties; it was not made to turn upon the title. The title was not in question, nor was the deed offered, nor was it necessary for the purpose of enabling the plaintiffs to maintain their suit. A plaintiff, in an action of trespass *quare clausum fregit*, need not, in order to maintain his action, show his title, so long as he can show a possession, or right of possession, either ad-

Todd v. Jackson.

verse to or consistent with the title set up by the defendant. *Chambers* v. *Donaldson and others*, 11 *East* 74.

For what purpose, then, was it necessary that the plaintiffs should offer their title in evidence? What bearing had this deed upon the issues the parties were trying? How were the defendants prejudiced by its admission, and the construction which the judge put upon it? If the deed was wholly immaterial to the rights of the parties, and the defendants were not prejudiced by its admission as evidence, it matters not whether the judge was right or wrong in admitting it.

This deed was evidently admitted by the court below, for the purpose of measuring the damages which the plaintiffs were entitled to recover. The injury done by the trespass was to the permanent injury of the freehold; and the judge seemed to think that, in order to entitle the plaintiffs in this case to recover the full extent of the injury done, it was necessary for them to show their title. The judge said to the jury: "If the plaintiffs had no interest, then, beyond a naked possession, the amount of their recovery should be graduated by one scale; if their possession was coupled with an interest in the estate real and personal, or either, it should be graduated by another scale." The Supreme Court, adopting this view of the judge at the circuit, and citing with approbation this part of his charge, took it for granted that if the principles thus laid down were correct, (and they certainly were,) the materiality of the deed, as to the extent of the damages which the plaintiffs were entitled to recover, was beyond dispute. Here, I think, both the judge at the circuit and the Supreme Court erred, and that the deed was not material to any questions which were submitted to the jury, because the plaintiffs' title, beyond their possession, was not put in issue by the pleadings, nor by the defendants, on the trial, in mitigation of damages.

In order to establish the materiality of that deed as evidence, you must maintain the broad proposition that, in

an action of trespass *quare clausum*, it is necessary, in order to entitle the plaintiff to recover the full extent of damages done to the freehold, that he should prove his title to the inheritance. If the proposition be true, then if A bring an action against B for cutting down timber trees upon his land or pulling down a house, A cannot recover the value of the building or of the trees cut, unless he shows his title in the land in addition to his possession. I think it may be affirmed with great confidence that such a principle cannot be found laid down by any elementary writer, and that no respectable authority can be found for it.

The action of trespass, both as to real and personal property, is a possessory action. A party in possession is, *prima facie*, the owner, and that possession will entitle him to recover to the extent of the injury done, unless the defendant show something in mitigation of the damages. If, then, the defendants could avail themselves of the principle laid down by the judge, " that, if the plaintiffs had no interest there beyond a naked possession, the amount of their recovery should be graduated by one scale," it was incumbent on them, in order to entitle themselves to have the damages graduated by that scale, to prove that the plaintiffs had no interest beyond a naked possession, or to, qualify their possession in some way. The defendants raised no such issue before that jury. They offered no evidence to qualify the possession of the plaintiffs. They did not rebut the *prima facie* case, which resulted from the fact of possession, that the plaintiffs were entitled to recover to the full extent of the injury. It would be a monstrous doctrine to establish, and fraught with innumerable evils, that a plaintiff in trespass cannot recover for a permanent injury done to the freehold, and to the full extent of the injury, without first establishing his title to the freehold, in addition to his title by possession. What would be the consequence in those numerous cases where men are in peaceable possession of property,

and have paid for it, and yet through some neglect have failed to procure a title, or have lost their title deed? Can any stranger enter upon such possession, pull down the dwelling-house over the head of the occupant, and when called to respond in damages, complacently ask the person he has injured to exhibit his documentary evidence of title? A man who is in possession of a dwelling-house has, by that possession, a title good against all the world for every purpose, until a superior one is shown; and most certainly it cannot be the law, and ought not, that such possession is not *prima facie* evidence of title against a wanton wrong-doer. It is certainly true, as stated by the Supreme Court, that a *reversioner* may bring his action on the case for damages done to the freehold affecting his reversionary interest. But if it be correct, that a person in possession cannot recover damages for an injury for which the reversioner is entitled to his action, the trespasser must show that there is such a reversioner, and that the damages should be mitigated, because he, the defendant, is answerable over for the same injury to another person.

There is nothing in the idea that the plaintiffs are prejudiced by the fact of having attempted to prove their title, and failed. If the title is immaterial, their failure to prove it is immaterial. In *Catteris* v. *Cowper*, 4 *Taunt.* 546, the plaintiff attempted to show the *locus in quo* was part of his farm, and failed. But the court say "the defendant stands neither on any former possession of his own, nor derives title under the possession of any other person; his only objection to the plaintiff's recovery is, that he has not proved the title he stood on, that this land was parcel of the farm he held; but no answer is given to the fact of his prior possession. The merits are clearly against the defendant." See also *Graham* v. *Peat*, 1 *East* 244; *Harper* v. *Charlesworth*, 4 *B. & C.* 574.

If it should be said, admitting that the defendants, in mitigation of damages, being entitled to show that some

one else than the plaintiff might maintain an action for the injury done to the inheritance, if the plaintiff chooses himself to exhibit his title, and thereby shows the fact, of which the defendant might have availed himself, the defendant is at liberty to take advantage of the exposure thus made by the plaintiff of his own title; still I think the proposition can be of no benefit to the defendants in this case. It appears to me the Supreme Court were manifestly in error as to the rights of these infants, even if the production of this deed can be regarded as establishing any title in them to the property in question; though I cannot see how the production of a deed by the plaintiffs of the conveyance of the infant's interest to them, which is absolutely void, establishes, for any purpose, the fact that they had any interest to be conveyed.

The Supreme Court, in their opinion, say: "As owners of the reversion, the infants were entitled to an action for the injury done to the property of a permanent nature amounting to waste, from which no act of the guardian precluded them." The authority cited (2 *Saund.* 253, *n.* 7,) is in affirmance of the well-established doctrine that a *reversioner* or *remainderman* for life or years, as well as in fee or tail, may maintain an action on the case in nature of waste for an injury to the inheritance. But although it may be true that the deed to the plaintiffs, as far as it purported to convey the interest of the infants in the estate, is void, it does not make these infants stand, in relation to this estate, either as *reversioners* or *remaindermen.* A reversion is " the residue of an estate left in the grantor, to commence in possession after the determination of some particular estate ;" and a *remainder* is an " estate limited to take effect and be enjoyed after another estate is determined." Surely these infants possess no estate embraced within these definitions. They are neither reversioners or remaindermen ; and, as such, could maintain no action on the case for an injury done to the estate. Their estate is a fee simple *untouched* by this deed. It is not the reversion

merely they are entitled to. Neither could they, upon their title, maintain an action of trespass, because Mrs. Holsman, as their guardian, was entitled to the possession, and that possession she gave up to the plaintiffs. There is no action which they could have brought for the alleged trespass. There was no one who could maintain an action for the trespass but the plaintiffs; and if they cannot recover damages to the full extent of the injury, then the trespass has been committed with impunity.

I cannot see that the Circuit Court committed any error which the defendants are entitled to have corrected.

The judgment of the Supreme Court should be reversed.

*For affirmance*—None.

*For reversal*—The Chancellor, the Chief Justice, and Judges Ryerson, Vredenburgh, Arrowsmith, Cornelison, Risley and Valentine.

Cited in *Mason* v. *Powell*, 9 *Vr.* 579.